# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
TERRIANN M. TERRY,                      )
      Plaintiff,                       )
                             )
vs.                                     )        **CIVIL ACTION**
                             )        **NO. 11-40117-TSH**
                             )
                             )
SIMPLEXGRINNELL LP,                     )
      Defendant.                       )
_____)

## ORDER AND MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMRY JUDGMENT (Docket No. 15) and Related Motions

**March 28, 2013**

**HILLMAN, D. J.**

### Background

Terriann M.Terry ("Plaintiff" or "Terry") filed a Complaint against SimplexGrinnell LP ("Simplex" or "Defendant") alleging federal claims under the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") and state law claims for discrimination and retaliation under the Massachusetts Anti-Discrimination Statute, Mass.Gen.L. ch.151B ("Chapter 151B"). This Memorandum and Decision addresses Defendant's Motion for Summary Judgment (Docket No. 15), Defendant's Motion To Strike Plaintiff's "Statement Of Undisputed Facts In Support Of Plaintiff's Opposition To Defendant's Motion For Summary Judgment" (Docket No. 38), and Defendant's Motion To Submit Supplemental Authority (Docket No. 45).

## Defendant's Motion To Strike

Simplex has moved to strike *Pl's Statement Of Undisputed Facts in Supp. Of Pl's Opp. To Def's Mot. For Sum J.* (Docket No. 23-1)("*Pl's Undisp. Facts*")  for failure to comply with this Court's rules.  More specifically, Plaintiff has filed a statement in which she admits or denies the facts asserted by Simplex in its D.Mass., LR. 56.1 statement of undisputed material facts. *See Pl's Resps. To Def's Statement of Undisp. Facts* (Docket No. 23-3).  She then filed *a separate* statement of facts as to which she asserts there is no genuine dispute. *See Pl's Undisp. Facts.*  Simplex argues that his Court's rules do not contemplate the opposing party filing a separate statement of undisputed facts, or at least not a fourteen page statement of facts, and therefore, the latter document should be stricken.

> This Court's Local Rule 56.1 provides, in relevant part, as follows:
>
> Motions for summary judgment shall include a concise statement of material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such statement constitutes grounds for denial of the motion. Opposition to motions for summary judgment … A party opposing the motion shall include a concise statement of material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation.

While Terry's response to Simlex's statement of material facts generally comports with Rule 56.1, her submission of a separate statement of *undisputed* facts is not contemplated by the rule.  Nevertheless, because accepting the material facts which she has asserted as true will not affect the Court's ruling, I am denying Simplex's motion to strike. However, I will not consider Terry's factual assertions to the extent that they are immaterial, or constitute conclusions of law.

**Defendant's Motion For Summary Judgment**

*Standard of Review*

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case." *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing,* 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or " improbable inferences". *Id.* (citation to quoted case omitted).

" ' The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." ' " *Id.* (citation to quoted case omitted).

*Facts*[1]

Simplex designs, engineers and installs fire protection systems and communications systems.  Simplex's Central Station Monitoring Service provides electronic surveillance for thousands of customers across North America, and specializes exclusively on serving commercial, industrial and institutional clients.  Simplex operated a cell monitoring center at its facility in Westminster, Massachusetts.  On December 8, 2008, after working at that Simplex facility for a period as a temporary employee, Terry was hired as a Customer Service Representative ("CSR") on the third shift.  During Terry's employment, Lisa Ellison ("Ellison") served as the call center manager, and  the call center supervisors were Erica Silliker ("Silliker"), Darlene Steele ("Steele") and Brandi Gauthier ("Gauthier").  Team leader Andrew Guile ("Guile") had supervisory responsibility during the third shift.

As  a CSR, Terry was responsible for processing all incoming alarms and phone calls in a timely and accurate manner and she was required to follow Simplex's procedures, guidelines and practices.  Her job duties were contained in a written job description.  Terry's CSR role implicated critical life and property safety because she was responsible to ensure that police and fire safety personnel were properly dispatched when customer alarms were triggered.  Terry's job description stated that the CSR position:

---

[1] As to both parties, the Court has ignored the many legal conclusions which have been asserted as factual allegations, and/or attempts to dispute factual allegations.  For example, Plaintiff's multiple references to Simplex having ignored, interfered with and/or violated  her rights under the FMLA are inappropriate.  Furthermore, where the Defendant has stated a fact and cited to affidavit or deposition testimony of one of its employees with personal knowledge thereof, Plaintiff cannot dispute that fact by simply asserting that she is unaware of or has no personal knowledge of the fact to which the affiant/witness is testifying.

> has very significant exposure to Simplex customers on a 24 hours a day, 7 days a
> week basis, both with respect to the issue of life safety in properly handling all
> alarm incidents and in the area of quality customer service by dealing with
> monitoring subscribers in a professional and expeditious manner.

Additionally, an essential function of Terry's job was to make necessary outgoing calls to

appropriate dispatch authorities such as first responders.  Terry never saw the written job

description.

Terry received a Simplex employee handbook ("Handbook") when she started her

employment.  The Handbook contained policies regarding leave of absence, family medical

leave, and short-term disability.  Terry does not recall reading the FMLA provisions in the

Handbook.  Simplex also posted information regarding employee rights, including employee's

FMLA rights.  Terry knew that Simplex posted information concerning worker's rights

immediately outside her work area, but does not recall seeing the FMLA information.  Simplex

also maintained a detailed FMLA policy on its intranet to which Terry had access.  Terry never

looked on the intranet site to determine if policies were posted; she does not recall an FMLA

posting.

Simplex utilized a no fault attendance point policy whereby employees were given points

for unscheduled absences such as calling in sick or unscheduled leave of work during a shift, or

for being tardy.  Excessive points would lead to progressive disciplinary action, starting with a

verbal warning and ending in termination.  Terry was given points for leaving when she was ill

or calling in sick.  Additionally, she was told she had mandatory overtime.

In January 2009, Terry cleared a burglar alarm without dispatching police.  In April 2009,

Terry failed to obtain a pass code from the customer and failed to dispatch the fire department,

holding the line for four minutes and exposing the customer's property to risk.  Also in April

2009, Terry did not properly document a call to the fire department for more than five minutes,

potentially leading to a delay in alerting the fire department to a call.  In July 2009, Terry cleared a burglar alarm after speaking to an individual who only identified himself as "Sherriff Roe"; she did not dispatch the local police.  After this incident, Terry was placed on a performance improvement plan.  On July 13, 2010, Guile found that Terry did not use the correct phone in reporting an active fire alarm, which led to it not being dispatched properly for nearly 10 minutes.  The customer had to call in the alarm directly to the emergency responders to obtain help because of Terry's error. Terry admitted her error.

On or about July 26, 2010, at about 3:02 a.m., Terry was at work and was found sleeping on the job by Guile.  While she was asleep, a burglar alarm had been tripped and was on her computer for about three minutes waiting to be addressed.  Terry was the only CSR not handling an alarm at the time. Guile woke Terry and handled the alarm himself.  After Guile addressed the alarm, he went to speak to Terry and again found her sleeping.  Terry may have had a low priority trouble alarm pending while she was asleep the second time.  Guile spoke to Terry and told her it was unacceptable to have operators sleeping on the dispatch line.  Terry admitted she had fallen asleep and agreed it was unacceptable; she told Guile that she had been sick and had changed her medication.  She does not recall providing any other details.  Terry felt she could not leave because mandatory overtime was required and she feared she would be at risk for termination.  She told Guile she had purchased an energy drink and she thought she would be fine for the remainder of the shift; Simplex sold energy drinks in vending machines.  The next day, Gauthier called Terry and informed her that she was being suspended for three days for falling asleep with an alarm pending.  Terry told Gauthier that she had not been feeling well at the time and that there were working on her medications; she did not provide any further details about any claimed illness or disabilities.

On or about July 26, 2012, Ellison was informed that Terry had been found sleeping while on duty and that, as a result, she had left an alarm unattended for approximately three minutes.  Due to the seriousness of the misconduct, Ellison made the decision to terminate Terry's employment. Simplex also considered several prior documented incidents of misconduct by Terry when it decided to terminate her.  Ellison was not aware that Terry had or claimed to have any medical impairments or disabilities and never discussed that Terry had any impairments or disabilities with any other Simplex employees.

On July 30, 2012, Simplex requested that Terry come to work for a  meeting. Terry met with Gauthier and another employee.  Gauthier told Terry that she was being terminated for falling asleep.   After being informed of her termination, Terry offered Gauthier a note from her physician stating that her medication changes *may* have caused her to fall asleep. Specifically, the note stated:

> I am Terriann's primary care physician and we have been making medication changes as of late.  At the most recent visit a new medication was initiated.  One of the very well-known side effects is lethargy and that may very clearly cause her to have difficulty with fatigue and possible sleep disturbances or falling asleep at work.  Any further questions or concerns please feel to contact me.
>
> /s/ *Vorderstrasse, Tricia L., MD*

Terry had seen her physician in June and had Cymbalta added to treat the fibromyalgia and depression.  Topomax was added to her other medications at some point.  Gauthier told Terry she did not want to hear it.

At the meeting, Terry was handed a termination letter; the termination letter indicated unsatisfactory attendance as the reason for her termination.  At the meeting with Gauthier, unsatisfactory attendance was not discussed as a reason for Terry's termination.  Terry's attendance was not unsatisfactory and she was not terminated for that reason.

Other than with respect to the vertigo incident described below, Terry had not provided Simplex with any information concerning any medical situation prior to the sleeping incident. Sleeping or giving the appearance of sleeping on the job was a violation of company policy. Terry understood that if she were found sleeping on the job, potential discipline included termination. Terry claims that other employees slept while at work, but she does not know if any company managers were aware of this fact.[2]  Ellison was not aware of any other instances where a CSR dispatcher such as Terry was found asleep while an alarm was pending.

On May 31, 2010 Terry suffered an incident of vertigo—she was dizzy and appeared ill. Guile had her sit down and called an ambulance.  Terry's vertigo was caused by an infection and was expected to resolve quickly; the vertigo did resolve within 48 hours and she chose to return to work the next day.  When she reported for work, she reported feeling dizzy and was told to go home.  She never asked for any accommodations, or leave from work other than on this one occasion.   At the time, she never spoke with anyone in management—other than Guile— she just left a doctor's note which excused her from work for two days.  She felt she had to return to work the next day because of Simplex's mandatory overtime policy— at the same time, she did feel well enough to attempt to work.

Terry suffers from several medical conditions, including fibromyalgia, asthma, depression, anxiety, allergies and migraines.  She was under a physician's care while at Simplex. Guile was around for conversations when Terry talked about her sinusitis, but she did not tell anyone in management that she suffers from occasional sinusitis and never asked anyone in management for any accommodations related thereto.  Terry mentioned to Gauthier and Steele that she was on depression medication.  Steele was no longer a supervisor at the time that Terry

---

[2] Terry disputes whether Simplex management was aware of employee's falling asleep.  In her deposition, Terry testified that she had seen Guile fall asleep *before* he became supervisor.  She testified that she did not know whether anyone in management knew that he or any other employee was sleeping while at work.

was fired and had no role in the sleeping incident.  She did not discuss being treated for depression with any other management employee, nor did she seek any accommodations for her depression.  Terry did not tell anyone at Simplex that she suffered from fibromyalgia.  Terry told Gauthier and Silliker that she had occasional asthma and allergies.  At times, her allergies and asthma make it difficult for her to read computer screens due to swollen eyes. She told them she used an inhaler and perfume could cause an attack.  She did not ask for any accommodations with respect to her asthma or allergies. On one occasion Terry reported that she needed to leave early because she has a migraine.  Terry can be bedridden and lose vision when she suffers an ocular migraine, which happens once or twice a month.  The migraine prevents her from doing any activity and can last twelve hours.

On June 1, 2009, Ellison completed a performance improvement plan for concerning Terry's attendance and leaving early. Specifically, it was noted that Terry had been tardy, left early, *or* been absent on seven occasions since the beginning of the year.  Ellison did not offer any accommodations or FMLA leave.  The Simplex Sick and Personal Policy for time off does not mention the point system, but allows time off in two hour increments. On November 17, 2009, Simplex received an Incident Report that Plaintiff left early due to breathing difficulty.  No FMLA counseling was provided.

The Handbook incorrectly states that to be eligible for FMLA, an employee had to work as least 1250 continuous hours during the twelve months immediately before the leave. [3]  Terry worked for Simplex for over a year and 1250 hours before her termination.  Terry never sought leave under the FMLA and was never incapacitated for a period of three or more days.  If Terry goes off her medication, she would suffer from depression, fatigue and anxiety and panic attacks.

---

4  The reference to 1250 "continuous" hours is legally incorrect; an employee need only work 1250 non-continuous hours in the previous year.  Terry makes much of the fact that the Employee Handbook contains this error.  At the same time, she claims not to have read the FMLA policy in the Handbook.

Terry testified that she does not believe that Simplex took any retaliatory action against her.  At the same time, she testified that she believed she engaged in conduct that cause Simplex to retaliate against her – she fell asleep—and Simplex retaliated by terminating her.  As a result of the termination, Terry increased depression, loss of sleep, embarrassment, emotional stress, anxiety and financial problems.  Simplex never offered Terry counseling concerning her rights under the FMLA and Simplex never offered her any type of accommodation.

<u>Discussion</u>

***Plaintiff's Claims for Violation of Federal and State Discrimination Laws***

Terry has asserted claims for discrimination under the ADA and Chapter 151B.  Terry articulates her claims as follows:  Simplex  (i) violated the ADA by failing to recognize that she suffered from a disability and by failing to offer her an accommodation;  (ii) discriminated against her by terminating her because of her disability; and (iii) retaliated against her by firing for falling asleep.  She also argues that Simplex's assertion that she was fired for sleeping on the job is pretextual and that she was actually fired for poor attendance.  She contends that her attendance issues were the result of her various "disabling" medical conditions, and therefore, the real reason for her termination was her disability.

Under the ADA, an employer is prohibited from discriminating against a "qualified individual" with a disability with respect to terms, conditions and privileges of employment.  42 U.S.C. §12112(a).  Discrimination can result where the employer fails to make a "reasonable accommodation" to the known physical or mental limitations of an otherwise qualified individual with a disability– that is where an employer fails to provide reasonable accommodations which would permit the employee to do her job .  42 U.S.C. §12112(b)(5)(A); *Tobin v. Liberty Mutual Ins. Co.*, 553 F.3d 121, 125 (1st Cir. 2009).  The employer is not required to make

accommodations which would create an "undue hardship."   The elements for a disability discrimination claim under Chapter 151B are identical.  *Miller v. Verizon Communications, Inc.*, 474 F.Supp.2d 187,194 (2007).[4]

In order to make out a *prima facie* of discrimination, the plaintiff must establish: "(1) that she was 'disabled' within the meaning of the ADA;  (2) that  [she was an otherwise qualified individual for her job, that is,] she was able to perform the essential functions of her job with or without accommodation; and (3) that she was discharged or adversely affected, in whole or in part, because of her disability." *Rivera v. Pfizer Pharmaceuticals, LLC,* 521 F.3d 76, 82 (1st Cir. 2008). With respect to a claim based on the employer's failure to provide reasonable accommodation, the third prong of the prima facie case can be satisfied by a showing that the employer "despite knowing of [the employee's] alleged disability, did not reasonably accommodate it." *Sensing,* 575 F.3d at 157 (citation to quoted case omitted).  A plaintiff may prove she was discriminated against because of her disability based on direct or indirect evidence.  If the plaintiff establishes her *prima facie* case, the employer must articulate a legitimate non-discriminatory reason for its actions.  If the employer does so, the burden then shifts back to the plaintiff to establish that the reasons offered by the employer were not the true reason for its actions, but were a pretext for discrimination. *Sensing,* 575 F.3d at 155.

To qualify as a disabled person under the ADA, the plaintiff must establish that she has "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having

---

[4] Chapter 151B is  the Massachusetts analogue  to the ADA. The Supreme Judicial Court of Massachusetts ("SJC") has indicated that federal case law construing the ADA is to be followed when interpreting  Chapter 151B . *Sensing*, 575 F.3d at 153-54.  The SJC has also adopted an analysis similar to that utilized by federal courts, *i.e.,* the now familiar burden-shifting framework set forth in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973).  Neither party has identified any material difference between application of the ADA and Chapter 151B to Terry's claims against Simplex.  Therefore, this Court's analysis of  Terry's ADA claim against Simplex will apply equally to her Chapter 151B disability discrimination claim.

such an impairment'". *Toyota Motors Manufacturing Kentucky, Inc. v. Williams,* 534 U.S. 184, 193, 122 S.Ct. 681 (2001); 42 U.S.C. §12102(2).  Simplex strongly disputes whether Terry has demonstrated that she suffers from a disability within the meaning of the ADA.  Nonetheless, for purposes of its motion, Simplex does not contest that Terry is a disabled person under the ADA. Therefore, I will assume that she has established the first prong of her *prima facie* case.

Simplex disputes that Terry has established the second prong of her *prima facie* case, *i.e.,* that she was a qualified individual who was able to perform the essential functions of her job with or without reasonable accommodation.  *McDonnell-Douglas*, 411 U.S. at 802, 93 S.Ct.1817.  Simplex does not argue that Terry did not have requisite education, knowledge or skills to perform her work, rather Simplex argues that Terry was unable to perform an essential function of her job, *i.e,* staying awake.  "Essential function" is a "fundamental job duty of the employment position the individual with a disability holds or desires." *Ward v. Massachusetts Health Research Institute,* 209 F.3d 29, 34 (1st Cir.2000).  The defendant bear the burden of proving that a given job function is one that is essential.

Contents of the job description are informative of, but not dispositive of the job's essential jog functions.  In this case, the CSR job description does not explicitly reference the need to stay awake.  However, as a CSR dispatcher, Terry was charged with monitoring alarms and when necessary, promptly dispatching first responder personnel.  To state the obvious, there can be no doubt that staying awake is an essential function of a job that involves the monitoring of customer communication and fire alarms—that is, the job requires alertness and awareness. According to Terry, her "disability" required her to take medication which caused her to become fatigued and fall asleep.  Given that she was subject to sleeping, Terry could not perform the

essential functions of her job.  The question thus becomes whether Terry could have performed the essential functions of her job with accommodations.

"Ordinarily, the employer's duty to accommodate is triggered by a request from the employee." *Freadman v. Metro. Prop. & Cas. Ins. Co.,* 484 F.3d 91, 102 (1st Cir.2007).  This is because the employer is often unaware of the employee's disability and/or need for accommodation.  Furthermore, the request must be sufficiently direct and specific, and  explain how the accommodation is related to the employee's disability.  *Id.*, at 102-03.  Moreover, "[t]he employer has no duty to divine the need for a special accommodation where the employee merely makes a mundane request for a change at the workplace." *Reed v. LePage Bakeries,Inc,* 244 F.3d 254, 261 (1st Cir. 2001).  In this case, prior to her termination, Terry never requested *any* accommodation or mentioned the need for accommodation.  Recognizing that she never requested an accommodation prior to her termination, Terry essentially argues that the need for an accommodation was obvious and therefore, Simplex was obligated to come to her and offer an accommodation—in particular, she asserts that Simplex should have changed her shift or granted her a leave of absence.  Assuming that the Court accepts this argument, the entirety of Terry's case rests on a few offhand remarks about her health problems and the fact that she left work early on one occasion because she had a migraine headache.  Such evidence is insufficient as a matter of law to have put Simplex on notice that she was disabled.  *See Freadman*, 484 F.3d at  104 (employee's statement she needed time off because she was starting not to feel well did not trigger employer's duty to accommodate).  Put another way, there is simply no evidence in the record to support a finding that her need for accommodation was or should have been obvious to her managers and/or supervisors.

Terry next argues that after being informed of her termination, she presented Gauthier with a doctor's note which was a request for an accommodation. Frankly, the doctor's note which Terry attempted to submit to Gauthier after the fact in addition to being too late was, in substance, neither a request for accommodation, nor, as discussed below, a request for leave under the FMLA—it was nothing more than a medical note to excuse her admittedly wrongful conduct, *i.e.*, falling asleep at her work station while an alarm was pending. For the reasons stated, I find that Terry has failed to establish the second prong of her *prima facie* case.

With respect to the third prong of Terry's *prima facie* case, the ADA imposes liability on employers who fail to accommodate "known physical or mental limitations" of an employee—in other words, an employer cannot be expected to accommodate a disability it does not know exists. A protracted discussion on this issues is not warranted. Simply put, the record is devoid of any evidence that Simplex was aware that Terry was suffering from any disabling health conditions at the time it fired her.[5] In particular, Ellison, the supervisor who made the decision to terminate Terry was not aware of any of her medical conditions. Therefore, she has failed to satisfy the third prong of her *prima facie* case.

### Terry's Retaliation Claim Under Chapter 151B

In her Complaint, Terry alleges that Simplex violated Chapter 151B by retaliating against by terminating her employment for needing accommodation for a disability. However, Terry has failed to establish that any actions by Simplex constituted retaliation for exercising any protected right. On the contrary, the totality of her argument is that she attempted to present Gauthier a note from her physician explaining the drowsiness effects of her medication, but the note was

---

[5] Terry makes much of the fact that her termination letter states she was fired because of her attendance. I do not find that this was a typographical error as suggested by Simplex. At the same time, if I were to get to the issue of whether her firing was pretextual, I would not find that the letter creates a genuine issue of material fact concerning her termination. Simplex acknowledges that Terry was not fired for her attendance and more importantly, it is undisputed that Terry was told in person by Gauthier that she was being fired for falling asleep.

refused and no opportunity was allowed to discuss the need for accommodations or leave.  She

failed to make any legal arguments in support of this claim and failed to cite any legal authority.

The claim is waived and Simplex's motion for summary judgment is granted with respect

thereto.

### *Plaintiff's Claim Under The FMLA*

Terry asserts that Simplex violated her rights under the FMLA by failing to apprise her

she could take leave under the FMLA due to her various medical conditions. The FMLA

provides that an eligible employee shall be entitled to a total of twelve weeks of leave during any

twelve-month period because of a serious medical condition which inhibits the employee from

working.  29 U.S.C. § 2612(a)(1)(D) (1994).  A "serious health condition," is defined as "an

illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a

hospital, hospice, or residential medical facility; or (B) continuing treatment by a health care

provider."  *Id.* at § 2611(11).

Interference claims under the FMLA are distinguishable from FMLA discrimination or

retaliation claims. An interference claim involves the denial of substantive rights that the FMLA

provides for employees, while discrimination and retaliation claims involve violations of FMLA

provisions that prohibit specific conduct by employers. *See Hodgens v. Gen. Dynamics Corp.*,

144 F.3d 151, 159-60 (1st Cir.1998).  As to interference claims, "[t]he issue is simply whether the

employer provided its employee the entitlements set forth in the FMLA." *Id.* at 159. Such claims

include the denial of substantive rights, as well as other actions by an employer that prevent or

even "deter" employees from exercising their rights. *Stallings v. Hussmann Corp.*, 447 F.3d

1041, 1050 (8th Cir.2006).

To prevail on her claim of interference with her FMLA rights, a plaintiff must prove: (1) that she was an eligible employee under the FMLA; (2) that her employer was a covered under the FMLA; (3) that she was entitled to FMLA leave; (4) that she gave her employer sufficient notice of her intent to take such leave; and (5) that her employer denied her benefits to which she was entitled. *Ridings v. Riverside Medical Center*, 537 F.3d 755, 761 (7th Cir.2008).   There is no relief under the interference provision of FMLA unless the employee has been prejudiced by a violation, that is, the employer is liable only for compensation and benefits lost by reason of violation. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S.Ct. 1155 (2002).

The crux of Terry's claim is that given her various medical conditions, Simplex violated the FMLA and is own policies by failing to suggest to her that she take FMLA leave and/or to counsel her about her rights under the FMLA.  She further alleges that Simplex violated her rights under the FMLA by failing to grant her leave when she presented Gauthier with her doctor's note at the conclusion of her termination meeting. Terry cites all of the facts which she states support her claim that Simplex violated her rights under the FMLA.  However, she does not provide any cogent legal argument or cite to any legal authority.  For that reason alone, Simplex is entitled to summary judgment on this claim. Moreover, for the reasons set for the below, summary judgment is warranted because Terry cannot establish a *prima facie* case for violation of the FMLA.

For purposes of its motion, Simplex has assumed that Terry is an eligible employee and that it is an employer covered by the FMLA.   However, Simplex asserts that she has failed to establish any of the remaining three elements of her *prima facie* case.  In order to satisfy the third element, Terry must establish that she was qualified to receive benefits under the FMLA.  I agree with Simplex that based on the evidence in the record, it is questionable as to whether Terry has

established that she satisfies any of the statutory prerequisites for obtaining FMLA leave.[6]

Nevertheless, for purposes of this Memorandum and Decision, I will assume that she has met

this requirement.  The fourth element of her *prima facie* case requires that she establish that she

gave her employer appropriate notice.  It is undisputed that Terry never requested FMLA leave

prior to her termination and Terry has not cited any authority to support her contention that

Simplex was under some sort of obligation to discern her need for FMLA leave. *Accord Leeds v.*

*Bae Systems*, 10-cv-109-JD, 2010 WL 3855220 (D.N.H. Sep. 28 2010).  To the extent that Terry

is arguing that her note from Dr. Vorderstrasse should be construed as a request for FMLA leave,

her argument fails.  Even if I were to assume that the request was timely, Dr. Vorderstrasse's

note would not serve as appropriate notice under the FMLA.  Dr. Vorderstrasse simply states that

Terry *may* have fallen asleep at work due to the interaction of her medications.  Nowhere in the

note is a medical condition mentioned and the note does not state that Terry needs any time off

from work.  Rather than putting Simplex on notice that Terry required medical leave, the note's

purpose appears to have been to provide Terry with a medical excuse for falling asleep at work.

Because Terry has failed to establish a *prima facie* case, Simplex is entitled to summary

judgment with respect to her FMLA claim.

Terry's claims for disability discrimination are based on the incredulous supposition that

Simplex should have somehow gleaned from a few comments to co-workers and her attendance

record (*i.e.,* a few absences from work or having to leave early on occasion) that she had

---

[6] As noted above, Terry must establish that she suffered from a "serious health condition,"  that is, an illness, injury, impairment, or physical or mental condition involving continuing treatment by a health care provider. 29 U.S.C. § 2612(a)(1)(D); 29 U.S.C. § 2611(11)(B).   Under the Department of Labor's implementing regulations, a "serious health condition involving continuing treatment by a health care provider" includes incapacity and treatment, pregnancy or prenatal care, chronic conditions, permanent or long-term conditions, and conditions requiring multiple treatments. 29 CRF 825.115.   Terry makes conclusory statements that she was entitled to FMLA leave as the result of her various medical conditions, *i.e.,* migraines, fibromyalgia, depression, asthma and allergies. However, the record is devoid of any *evidence* of incapacitation and treatment, chronic or permanent long care conditions or conditions requiring multiple treatments.

disabling medical conditions for which it was obligated to offer accommodations.   Additionally,

Simplex was apparently supposed to counsel her about the FMLA and suggest that she take

FMLA leave every time she was out sick from work or had to leave early because she was not

feeling well.  Neither the ADA nor the FMLA places such impossible burdens on an employer.

For the reasons set forth above, Simplex's motion for summary judgment is granted.

**<u>Conclusion</u>**

It is hereby Ordered that:

    1. Defendant's Motion for Summary Judgment (Docket No. 15) is **_granted_**

    2. Defendant's Motion To Strike Plaintiff's "Statement Of Undisputed Facts In Support

Of Plaintiff's Opposition To Defendant's Motion For Summary Judgment" (Docket No. 38) is

**_denied;_** and

    3.  Defendant's Motion To Submit Supplemental Authority (Docket No. 45) is **_denied_**, **_as
moot_**.

Accordingly, judgment shall enter for Simplex Grinnell LP.

                        **_/s/ Timothy S. Hillman_**
                        TIMOTHY S. HILLMAN
                        DISTRICT JUDGE